# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

EARL R. MAYFIELD,

      Plaintiff,

vs.                                    No. CV 17-00332 WJ/KK

CRAIG COLE, CHRIS ARAGON,
and CAMERON J. GEMOE,

      Defendants.

## MEMORANDUM OPINON AND ORDER

**THIS MATTER** is before the Court under 28 U.S.C. § 1915A, Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B) on the Amended Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 filed by Plaintiff Earl R. Mayfield on November 16, 2017. (Doc. 20) ("Amended Complaint"). The Court dismisses the Amended Complaint for failure to state a claim on which relief can be granted and imposes a third "strike" under the Prison Litigation Reform Act, 28 U.S.C. § 1915(g).

Plaintiff Earl Mayfield is proceeding pro se and *in forma pauperis*. Plaintiff Mayfield instituted this action by a letter complaint on March 9, 2017. (Doc. 1). Mayfield subsequently amended his complaint and sent numerous filings seeking to further amend or supplement his original filing. (Doc. 2, 3, 6, 9, 14, 15). The Court entered a Memorandum Opinion and Order on September 20, 2017, dismissing Mayfield's claims for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B), and granting Mayfield leave to file an amended complaint within 30 days. (Doc. 19).

Mayfield did not amend his complaint within the 30 day time period. Instead, on November 16, 2017, Mayfield filed an Emergency Motion for Continuance (Doc. 21) and his second Amended Complaint. (Doc. 20). His Emergency Motion sought an extension of time to file the Amended Complaint on the grounds that the Northeastern New Mexico Detention Facility had delayed delivery of the Court's Memorandum Opinion and Order to Mayfield for one and one-half months. (Doc. 21). The Court grants Mayfield's request for an extension of time and accepts the Amended Complaint as filed in a timely manner. Mayfield's Emergency Motion also requested the Court order "NENMBF and DOC to stop the delayed passing out of and/or hinderance of mail." (Doc. 21 at 2). Neither NENMBF nor DOC is a party to this action and the Court denies Mayfield's request for an order directed to them.

In the Amended Complaint, Mayfield identifies four Defendants: Chief Classification Officer Craig Cole; Disciplinary Hearing Officer Lt. C.J. Giermoe;[1] Correctional Officer Sgt. Daniel Grant; and Nurse Stephanie Westerfield. (Doc. 20 at 1-3). The Amended Complaint consists largely of conclusory, factually unsupported allegations of civil rights violations. (Doc. 20 at 1-4, 7-14). Mayfield's request for relief states:

> For each and every violation of Plaintiff's rights wherefore I move this
> Honorable Court for monetary, compensatory, and punitive damages
> in the amount of $1,000,000. ∞ and that the above mentioned Defendants
> and DOC receive better training and or higher sanctions for violations, so
> that no other inmate has to endure these violations, and that CD/DOC/ACA
> start taking seriously the law and care for their inmates. Better training for
> all staff that State Police be call so I can press charges against Lt CJ Gemos.
> And any other relief this fed court deem just, and that CNMCF follow
> PLGRA when it come to grieve & appeal, displinary action ect."

(Doc. 20 at 14).

---

[1] Mayfield variously spells the name as "Giermoe," "Gemoe," "Giemoe," "Germoe," and "Gemos." See Doc. 20 at 2, 8, 9, 11. Except when quoting Mayfield, the Court uses Mayfield's initial spelling of "Giermoe" for purposes of this Memorandum Opinion and Order.

## ANALYSIS OF PLAINTIFF MAYFIELD'S CLAIMS

Plaintiff Mayfield is proceeding pro se and *in forma pauperis* under 42 U.S.C. § 1983. The Court has the discretion to dismiss an *in forma pauperis* complaint *sua sponte* for failure to state a claim upon which relief may be granted under either Fed. R. Civ. P. 12(b)(6) or 28 U.S.C. § 1915(e)(2)(B). Under Fed. R. Civ. P. 12(b)(6) the Court must accept all well-pled factual allegations, but not conclusory, unsupported allegations, and may not consider matters outside the pleading. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Dunn v. White,* 880 F.2d 1188, 1190 (10th Cir. 1989). The court may dismiss a complaint under Rule 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged." *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991) (quoting *McKinney v. Oklahoma Dep't of Human Services,* 925 F.2d 363, 365 (10th Cir. 1991)). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A claim should be dismissed where it is legally or factually insufficient to state a plausible claim for relief. *Twombly*, 550 U.S. at 570.

Under § 1915(e)(2)(B) the Court may dismiss the complaint at any time if the Court determines the action fails to state a claim for relief or is frivolous or malicious. 28 U.S.C. § 915(e)(2)(B)(2). The authority granted by § 1915 permits the court the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neitzke v. Williams,* 490 U.S. 319, 327 (1989). *See also Hall v. Bellmon,* 935 F.2d at 1109. The authority to "pierce the veil of the complaint's factual allegations" means that a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992). The Court is not required to accept the truth of the plaintiff's

allegations but, instead, may go beyond the pleadings and consider any other materials filed by the parties, as well as court proceedings subject to judicial notice. *Denton,* 504 U.S. at 32-33.

In reviewing a pro se complaint, the Court liberally construes the factual allegations. *See Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992). However, a pro se plaintiff's pleadings are judged by the same legal standards that apply to all litigants and a pro se plaintiff must abide by the applicable rules of court. *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir. 1994). The Court is not obligated to craft legal theories for the plaintiff or to supply factual allegations to support the plaintiff's claims. Nor may the Court assume the role of advocate for the pro se litigant. *Hall v. Bellmon,* 935 F.2d at 1110.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by government officials acting under color of law that result in a deprivation of rights secured by the United States Constitution. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). There must be a connection between official conduct and violation of a constitutional right. Conduct that is not connected to a constitutional violation is not actionable under Section 1983. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998).

Further, a civil rights action against a public official or entity may not be based solely on a theory of respondeat superior liability for the actions of co-workers or subordinates. A plaintiff must plead that each government official, through the official's own individual actions, has violated the Constitution. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). Plaintiff must allege some personal involvement by an identified official in the alleged constitutional violation to succeed under § 1983. *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008). In a Section 1983 action, it is particularly important that a plaintiff's complaint "make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of

the claim against him or her." *Robbins v. Oklahoma,* 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in the original).

    **I.**   **Claims Against Chief Classification Officer Craig Cole:** In his Amended Complaint, Plaintiff Mayfield alleges:

> "Mr. Cole is the Cheif Classification Officer at CNMCF and an employee of DOC. All acted in their own individual capacity to add and/or allow sexual contact, battery, conspiracy, civil rights violations, due process violations, falsified misconduct reports, and retaliation CD policy, DOC & ACA policy, denied equal protection of the law and cruel and unusual punishment. PREA Complain.
> . . .
> Then the retaliation starts. I was told by medical staff that I could obtain a grievance form from the education bldg., so once in the ed. bldg. I encountered Creg Cole, at which time he threatened me with a right up if I didn't leave.
> . . .
> Also C. Cole denial me legal access, due process, I never seen a case worker, never taken to committee before transfer, he was an still is head classification officer from 2-2-17 to 3-17-17. Did i see a case worker or taken to committee, all at no time did he order or answer any of 20 informal complaints, and threat me when I try to got to his office for a grievs, I was not allow to comply with PLGRA cause of him Head classification officer C. Cole was and still is responsible for the running of CNMCF on a day to day basec yet he chose to not do his job, by turning a blind eye to lt, sgt, Def action to be inclosed grivs and displney action process, all these dept hes responsible for. yet he stood by noing my USC/NMC right kept being violated. Def C. Cole even order Sgt. Aragon to write me a misconduct report even those I had a ID. Its wasnt from CNMDF but my Risk Ban ID show my name/number/ the order the Sgt to writ report, when if a repot was to be given Def C Cole should wrote it I was in ED Building, where I was told I could get grives to file I even pick them up and Def made me leave them."

(Doc. 20 at 1, 8, 11-12).

Although he makes vague references to legal access and due process, the Amended Complaint does not make any specific factual allegations of any act or omission by Officer Cole that resulted in deprivation of a constitutional right. *West v. Atkins*, 487 U.S. at 48. Nor can Officer Cole be held liable based on vague, generalized assertions of turning a "blind eye" to unspecified misconduct by other officers. *Fogarty v. Gallegos,* 523 F.3d at 1162. *See Pierce v. Delta County Dep't of Social Servs.,* 119 F.Supp.2d 1139, 1155 (D.Colo.2000) (no supervisory

liability where subordinate's conduct was not unconstitutional). The mere naming of Officer Cole as a Defendant, without any allegations of personal involvement by him in a constitutional violation, is insufficient to state a claim upon which relief can be granted against him. *See Bennett v. Passic,* 545 F.2d 1260, 1262–63 (10th Cir.1983) (personal participation is a requirement for § 1983 liability). Mayfield's formulaic recitations of legal access and due process violations are not sufficient to state a plausible § 1983 claim against Officer Cole. *Ashcroft v. Iqbal,* 556 U.S. at 676; *Twombly,* 550 U.S. at 570.

2. **Claims Against Nurse Stephanie Westerfield:** The allegations against Defendant Stephanie Westerfield in Mayfield's Amended Complaint state:

> "Defendant Stephanie Westerfield is a citizen of New Mexico and is employed as a nurse at CNMDC. At the time the claim(s) alleged in this complaint arose, this defendant was acting under the color of state law. Yes: special attn Federal Courts: I filed a disciplinary complaint with the State of New Mexico Nursing board. They said that they had NEVER heard of Ms. Westinfield. Is this her real name? Does he have a nursing degree? Is she even qualified to work as a nurse for the DOC? Will the Court please look into this? Ms. Westerfield conspired and allowed the above mentioned defendants to violate the Plaintiff's civil and human rights."

(Doc. 20 at 3). The remainder of the allegations against Defendant Westerfield are generalized statements that she submitted or allowed others to submit a false misconduct report using her name. (Doc. 20 at 9, 11).

The Amended Complaint does not have a copy of the alleged false misconduct report attached, does not indicate the nature of the alleged misconduct, and does not explain how any such report was false. Nor does the Amended Complaint allege which of Mr. Mayfield's civil rights were violated or how any actions by Defendant Westerfield resulted in a violation of his civil rights. *Ashcroft v. Iqbal,* 556 U.S. at 676. The Amended Complaint does not state any

6

plausible § 1983 claim for relief against Defendant Stephanie Westerfield. *Twombly,* 550 U.S. at 570.

      **3. <u>Allegations Against Sgt. Daniel Grant</u>:** With respect to Defendant Grant, Mayfield claims:

> "Defendant Sgt. Daniel Grant is a citizen of New Mexico and is employed
> as a Correctional Officer, a Sgt at CNMDC. At the time of this claim
> alleged in this complaint, this defendant was acting under the color of law.
> Yes: Mr. Grant is a yard Sgt. during the evening med. line call. He and
> CJ Giermoe falsified a misconduct report using Ms. Stephanie Westerfields
> name, later told Ms. Westerfield, who complied, and then served retaliation
> against the incident. I'm claiming conspiracy, falsifying misconduct reports,
> threats.
> . . .
> At this time I noticed that the report was writte on or about 3/3/17, and written
> by Stephanie Westerfield the Nurse, and signed off by Sgt. Daniel Grant who
> was Ms. Westerfield's lover. . .Days later Sgt Grant and Ms. Westerfield were
> together passing out meds in my Pod. I asked her about the misconduct report.
> She acted as if she knew nothing about this report. Sgt. Grant slams my cell door
> a wispers in the nurses ear that I'm talking about a misconduct report he and
> Lt. Gemoe had written for her, or in her name. They also signed and forged her name.
> . . .
> I do believe that the Warden suspended Sgt. Grant related to all the above
> mentioned actions."

(Doc. 20 at 3, 9, 10).

      The allegations against Sgt. Grant similarly do not specify how any misconduct report by Sgt. Grant was false, which of Mayfield's constitutional rights was violated, or how any conduct or report by Sgt. Grant resulted in any violation of a constitutional right. *Robbins v. Oklahoma,* 519 F.3d at 1249-50. Even if Sgt. Grant did prepare a misconduct report using Defendant Westerfield's name, the Amended Complaint does not state a plausible civil rights claim for relief against Sgt. Grant. *Ashcroft v. Iqbal,* 556 U.S. at 676.

      **4. <u>Allegations Against Lt. C.J. Giermoe</u>:**

      Plaintiff Mayfield makes allegations against a Defendant he identifies as "C.J. Giermoe, Lt." (Doc. 20 at 2). Mayfield claims:

7

> "I was housed at CNMCD when I was sexually assaulted and battered by
> Lt. C.J. Giermoe, touching fisical abuse, etc. Once I declined all of his
> sexual advances he conspired with all the above mentioned Def. as a form
> of retaliation for not giving in to his sexual advances."

(Doc. 20 at 2). Although Mayfield makes generalized allegations of sexual assault and battery, he only specifies one instance of claimed conduct by Lt. Giermoe:

> "Upon my arrival at CNMCF I received lots of legal mail, at which
> time I encountered Lt. Gemoe, who attempted to befriend me and
> engage in an inappropriate sexual relationship by handing me a
> pen to sign for legal mail, rubbing my hand, making comments like:
> 'you black guys got big dicks', licking his lips while looking at
> my croch area."

(Doc. 20 at 8).

Claims of sexual harassment in prison proceed under the Eighth Amendment. Inmates alleging Eighth Amendment violations based on prison conditions must demonstrate that prison officials were deliberately indifferent to their health or safety by subjecting them to a substantial risk of serious harm. *Farmer v. Brennan,* 511 U.S. 825, 834, (1994); *Wallis v. Baldwin,* 70 F.3d 1074, 1076 (9th Cir.1995). Prison officials display a deliberate indifference to an inmate's well-being when they consciously disregard an excessive risk of harm to the inmate's health or safety. *Farmer,* 511 U.S. at 838–40; *Wallis,* 70 F.3d at 1077.

The Eighth Amendment standard requires proof of both an objective and a subjective component. *Hudson v. McMillian,* 503 U.S. 1 (1992). If either of these components is not established, the court need not inquire as to the existence of the other. *Helling v. McKinney,* 509 U.S. 25, 35 (1993). The deprivation alleged must objectively be sufficiently serious, resulting in a denial of the "minimal civilized measures of life's necessities." *Farmer,* 511 U.S. at 834 (*quoting Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). An inmate must establish that there was both some degree of actual or potential injury, and that society considers the acts that the

plaintiff complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to those acts. *Helling,* 509 U.S. at 36; *see also Estelle v. Gamble,* 429 U.S. 97, 102, (1976).

The Tenth Circuit has held that there is no clearly established constitutional right to be free from sexual harassment while incarcerated. *Adkins v. Rodriguez,* 59 F.3d 1034, 1037–38 (10th Cir.1995). The Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimus* abuse that does not rise to the level of threats of violence or severe physical intimidation. *Adkins,* 59 F.3d at 1037.

The record contains documentation that raises questions as to the veracity of Mayfield's allegations. *See* Doc. 14 at 5 (finding Mayfield guilty of misconduct in making the allegations). However, even if Mayfield's claims are true, he has failed to describe conduct that amounts to physically abusive touching that rises to the level of an Eighth Amendment violation. *See Jackson v. Cen. N.M. Corr. Facility,* 976 F.2d 740 (table) (10th Cir. Sept. 21, 1992) (unpublished decision); *Harris v. Rocchio,* 132 F.3d 42 (table) (10th Cir. Dec. 24, 1997) (unpublished decision). The degree and infrequency of the conduct does not involve a harm of federal constitutional proportions as defined by the Supreme Court and fails to state an Eighth Amendment claim for relief. *Boddie v. Schnieder,* 105 F.3d 857, 860–61 (2d Cir.1997).

Similarly, to the extent Mayfield claims verbal harassment, the words he attributes to Lt. Giermoe do not involve the sort of violence or threats of violence cognizable under the Eighth Amendment. *Boddie,* 105 F.3d at 860-61. Instances of sexual harassment that are not objectively sufficiently serious to demonstrate a use of force of a constitutional magnitude do not state a § 1983 claim. *Williams v. Anderson,* 2004 WL 2282927, at \*\*3–4 (D. Kan. 2004) (unpublished decision) (finding that the verbal harassment alleged by the inmate, even when coupled with

9

offensive sexual touching, did not "rise to the level of a constitutional violation"). Further, absent an allegation that Defendant Giermoe subjectively knew that his words posed an objectively serious threat of injury to Plaintiff Mayfield, the conduct attributed to Defendant Giermoe does not rise to the level of a constitutional violation. *Farmer,* 511 U.S. at 834. Mayfield's claims of sexual abuse or harassment fail to state a § 1983 claim for relief.

Mayfield also asserts retaliation claims, alleging that after he rejected Lt. Giermoe's advances, Giermoe engaged in a pattern of retaliation by signing off on disciplinary reports and acting as the hearing officer in disciplinary proceedings. (Doc. 20 at 8-9, 11). Mayfield claims that Giermoe was "Judge, Jury, and Executioner all at the same time" and "sentenced me to thirty (30) days of lose of visits, and thirty (30) days lose of commissary." (Doc. 20 at 2, 9).

The Amended Complaint indicates that Lt. Giermoe is the disciplinary officer for the facility where Mayfield was incarcerated. (Doc. 20 at 2). Allegations that he signed off on disciplinary reports and conducted disciplinary hearings merely demonstrate that he was performing his job and do not rise to the level of a constitutional violation. An officer's participation in a disciplinary proceeding standing alone does not amount to individual participation in a constitutional violation. *See Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir.2009).

In order to establish a retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action. *Scott v. Churchill,* 377 F.3d 565, 569 (6th Cir.2004). An inmate's retaliation claim must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional right. *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir.1998) (citation omitted). However, an inmate is not "inoculated from

the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity." *Peterson v. Shanks,* 149 F.3d at 1144. To prevail on the causation element of a claim for retaliation, the prisoner must establish that, but for the retaliatory motive, the alleged incidents would not have taken place. *Smith v. Maschner,* 899 F.2d 940, 949–50 (10th Cir.1990). Mayfield does not allege specific facts showing that he was engaged in the exercise of a constitutional right. *Scott v. Churchill,* 377 F.3d at 569. Further, the allegations do not establish that, but for retaliatory motive, the disciplinary proceedings would not have taken place. *Smith v. Maschner,* 899 F.2d at 949–50. The Amended Complaint fails to state a constitutional retaliation claim for relief.

Last, to the extent that Mayfield asserts Lt. Giermoe's actions violated Mayfield's due process rights, his Amended Complaint similarly does not state a claim for relief. A prisoner does not have a right to procedural due process protections in every disciplinary action, but only in those matters that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). A limited restriction on prison privileges generally does not implicate a protected liberty interest or require due process protections. *See Rodriguez v. Gen. Counsel for the Fed. Bureau of Prisons,* 315 Fed. Appx. 79, 80, 2009 WL 485032, *1 (10th Cir. Feb. 27, 2009) (unpublished) (no protected liberty interest presented where prisoner was sanctioned with 60–day loss of commissary and telephone privileges). Accordingly, the sanctions imposed in Mayfield's case involving the 30–day loss of the commissary and visitation privileges do not state a due process claim for relief.

### **The Court Will Impose a Third "Strike" Under 28 U.S.C. § 1915(g)**

When it enacted the *in forma pauperis* statute, Congress recognized that a citizen should not be denied an opportunity to commence a civil action in any court of the United States solely

because he is unable to pay or secure the costs. *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 342 (1948). However, Congress also recognized that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits. *Neitzke v. Williams,* 490 U.S. at 324. Noting that prisoner suits represent a disproportionate share of federal filings, Congress enacted a variety of reforms designed to filter out deficient claims. *Jones v. Bock,* 549 U.S. at 202-04.

Those reforms include the three-strike rule of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g). The three-strike rule of § 1915(g) states:

> "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

The Court determines that Mayfield's Complaint in this case fails to state a claim for relief and is frivolous. Because the Court concludes that Mayfield's Complaint in this case fails to state a claim for relief under § 1915(e)(2)(B), the Court will impose a strike against him pursuant to the Prison Litigation Reform Act § 1915(g). Mayfield is notified that, because this is his third strike under § 1915(g), he may not proceed *in forma pauperis* in any future civil actions before federal courts unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). *See also Mayfield v. Garcia,* CV 16-00805 JB/JRH (Doc. 49); *Mayfield v. Presbyterian Hosp.,* CV 17-00398 MCA/KRS (Doc. 12).

**IT IS ORDERED:**

(1) Plaintiff Earl R. Mayfield's Emergency Motion for Continuance (Doc. 21) is

**GRANTED IN PART AND DENIED IN PART**;

(2) the Amended Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 filed by Plaintiff Earl R. Mayfield on November 16, 2017 (Doc. 20) and all claims and causes of action are **DISMISSED WITH PREJUDICE**; and

(3) a third **STRIKE** is imposed against Earl R. Mayfield under 28 U.S.C. § 1915(g) and Plaintiff Mayfield may not proceed in any future civil actions before federal courts without prepayment of fees and costs unless he is under imminent danger of serious physical injury.

_____
CHIEF UNITED STATES DISTRICT JUDGE